UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| GREGORY HAROLD MOORE, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Nos. 2:17-CV-140; 2:15-CR-96(1) |
| ) | *Judge Jordan* |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM OPINION**

Before the Court is Petitioner Gregory Harold Moore's pro se motion to vacate, set aside, or correct his sentence filed under 28 U.S.C. § 2255 and the United States' response in opposition to the motion [Docs. 1 and 3].[1] Petitioner did not reply to the response and the time for doing so has now passed. *See* E.D. Tenn. L.R. 7.1, 7.2. In its response, the United States asserts that Petitioner is not entitled to relief because his claims have no merit.

The Court finds the materials submitted, together with the record of the underlying criminal case conclusively show that Petitioner is not entitled to relief on the claims asserted in his motion. Accordingly, the Court will decide this matter without an evidentiary hearing. *See Campbell v. United States*, 686 F.3d 353, 357 (6th Cir. 2012). For the reasons discussed below, the Court will find that Petitioner's motion to vacate lacks merit and, thus, will **DENY** and **DISMISS** his § 2255 motion **WITH PREJUDICE**.

---

[1] Unless otherwise noted, document references in this Opinion are to documents filed in Petitioner's civil case, Case Number 2:17-CV-140.

# I. PROCEDURAL BACKGROUND

On August 25, 2015, a federal grand jury issued a 10-count indictment charging Petitioner with offenses involving drug-trafficking conspiracies, distribution of controlled substances, and possession of firearms [Docs. 1, 8, Case No. 2:15-CR-96]. A superseding indictment added four co-defendants to the case and 9 additional counts against Petitioner [Doc. 26 (sealed), Case No. 2:15-CR-96]

On February 5, 2016, Petitioner entered into a plea agreement with the government, *see* Fed. R. Crim. P. 11(c)(1)(A) [Doc. 72, Case. No. 2:15-CR-96]. Petitioner agreed to plead guilty to six counts alleged in the superseding indictment, to wit, conspiracy to distribute and to possess with intent to distribute fifty grams or more of methamphetamine (actual), in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846 (Count 1); conspiracy to distribute and to possess with intent to distribute a quantity of hydrocodone, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846 (Count 2); conspiracy to distribute and to possess with intent to distribute a quantity of oxymorphone, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846 (Count 3); conspiracy to distribute and to possess with intent to distribute a quantity of oxycodone, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846 (Count 4); possession of a firearm in furtherance of a drug trafficking crime (Count 10), in violation of 18 U.S.C. § 924(c)(1)(A) (Count 14); and conspiracy to threaten and attempt to engage in conduct which would cause bodily injury with intent to retaliate against a person for information believed to have been given to a law enforcement officer related to the commission and possible commission of a federal offense, a violation of 18 U.S.C. § 1513(b)(2) (Count 19) [*Id.* at ¶¶ 1(a)-(f)]. The remaining counts were to be dismissed at sentencing [*Id.* at ¶ 2].

On February 16, 2016, eleven days after entry of the plea agreement, Petitioner pled guilty to Counts 1-4, 14 and 19 as charged in the superseding indictment [Doc. 80, Minute Entry, Case. No. 2:15-CR-96]. Thereafter, the United States Probation Office issued a Presentence Investigation Report (PSR) [Doc. 96 (sealed), Case No. 2:15-CR-96].

The probation officer who prepared the PSR grouped together Counts 1-4 and 19 and determined Petitioner's base offense level to be 32 based on the 6261.6 kilograms of marijuana equivalent (derived from stipulations in his plea agreement [Doc. 72 at ¶4(t)]) involved his § 841(a)(1) offenses, [Doc. 96 at ¶¶ 35-37]. Two points were added for using violence, making a credible threat to use violence, or directing the use of violence, *see* USSG § 2D1.1(b)(2), another two points were added for maintaining a premise for the purpose of distributing a controlled substance, *see* USSG § 2D1.1(b)(12), a further three points were added for his role in the offense as a manager or supervisor (but not an organizer or leader) of criminal activity involving five or more participants or an otherwise extensive criminal operation, *see* USSG § 3B1.1(b), and an additional two points for obstruction of justice, *see* USSG § 3C1.1, yielded an adjusted offense level of 41 [*Id.* at ¶¶ 38-39, 41-43]. A three-level downward adjustment for acceptance of responsibility lowered Petitioner's total offense level to 38 [*Id.* at ¶¶ 44-46]. Petitioner had six criminal history points for a criminal history category of III [*Id.* at ¶60]. With an offense level of 38 and a criminal history category of III, Petitioner's guidelines range was 292 to 365 months. However, because Count 14, possession of a firearm in furtherance of a drug trafficking offense, required a guideline sentence to be the statutory minimum sentence of five years imprisonment, consecutive to any other term of imprisonment, *see* USSG § 2K2.4, Petitioner's effective guidelines range was 352 months to 425 months [*Id.* at ¶ 47-48, 84].

Petitioner objected to three sentencing enhancements in the PSR [Doc. 122, Case No. 2:15-CR-96]. The Court overruled his objections [Docs. 122, 127, Case No. 2:15-CR-96] and sentenced him to a net 360-months' imprisonment, consisting of a concurrent 240 months as to each of Counts 2-4 and 19 and 60 months on Count 14, to be served consecutively [Docs. 122, 155, Case No. 2:15-CR-96]. Petitioner's sentence of incarceration was to be followed by a net term of five years of supervised release [*Id.*]. All other counts in the superseding indictment were dismissed on the government's motion [*Id.*]. Judgment entered on August 24, 2016 [Doc. 158, *Judgment*, Case No. 2:15-CR-96].

Petitioner filed a notice of appeal [Doc. 163, Case No. 2:15-CR-96]. After granting trial counsel's motion to withdraw from the representation, the Sixth Circuit appointed counsel to represent Petitioner in the appeal [Docs. 165-175, Case No. 2:15-CR-96]. On January 1, 2017, the appeal was dismissed on Petitioner's motion to voluntarily dismiss his appeal [Doc. 197, Case No. 2:15-CR-96]. Eight months later, on August 18, 2017, Petitioner timely filed this motion to vacate under § 2255, alleging several claims of ineffective assistance of counsel [Doc. 1].

## II. FACTS

The Court summarizes the facts from those to which Petitioner stipulated, as contained in the factual basis in the plea agreement [Doc. 72, Case No. 2:15-CR-96]. From January, 2015 through October 2015, Petitioner conspired to distribute and to possess with intent to distribute fifty grams or more of methamphetamine (actual) and quantities of hydrocodone, oxymorphone and oxycodone [Doc. 72 at ¶4(a), Case No. 2:15-CR-96]. The conspiracy was investigated by law enforcement officers who used confidential informants to purchase narcotics in a series of controlled transactions that were recorded from May 18, 2015, to August 14, 2015 [*Id.* at ¶ 4(b)-(g)].

On August 18, 2015, officers executed a federal search warrant on Petitioner's residence and found $24,276 in cash and approximately 48 firearms [*Id.* at 4(h)-(i)]. Petitioner was arrested and taken to jail [*Id.* at ¶4(j)]. While in jail, Petitioner made several recorded calls during which he threatened to harm co-conspirators who cooperated with law enforcement officials [*Id.* at 4(l), (p)]. In another recorded call, Petitioner revealed to his wife that various drugs he had hidden in a weight bench in his residence had been missed by officers who executed the search warrant and instructed her to give the drugs to two co-conspirators [*Id.* at ¶ 4(j)]. Petitioner was told that the hidden drugs were recovered by officer who revisited the residence [*Id.* at ¶ 4(q)].

### III.     STANDARDS OF REVIEW

**A.     Motions to Vacate**

To obtain relief under 28 U.S.C. § 2255, a petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)).  To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings.  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Jefferson v. United States*, 730 F.3d 537, 549 (6th Cir. 2013) (applying *Brecht* test to § 2255 motion).  A petitioner "must clear a significantly higher hurdle than would exist on direct appeal" to secure collateral relief.  *United States v. Frady*, 456 U.S. 152, 166 (1982); *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (citing *Frady*, 456 U.S. at 166).

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735

(6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

**B.**     **Ineffective Assistance of Counsel**

When a § 2255 movant claims he was denied his Sixth Amendment right to effective assistance of counsel, a court must presume that counsel provided effective assistance, and the movant bears the burden of showing otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616-17 (6th Cir. 2003). To meet that burden, a movant must prove that specific acts or omissions by his attorney were deficient and that the attorney failed to provide "reasonably effective assistance," *Strickland v. Washington*, 466 U.S. 668, 687 (1987), which is measured by "prevailing professional norms," *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). "[T]he constitutional right at issue here is ultimately the right to a fair trial, not to perfect representation." *Smith v. Mitchell,* 348 F.3d. 177, 201 (6th. Cir. 2003) (citing *Strickland*).

Second, a petitioner must demonstrate "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome," *id.*, and "requires a substantial, not just conceivable, likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (citation and internal quotation marks omitted). In a guilty plea context, to establish prejudice a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Yet, "[a]n error by counsel, even if

6

professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Furthermore, if "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Strickland*, 466 U.S. at 697.

"Surmounting *Strickland*'s high bar is never an easy task and the strong societal interest in finality has 'special force with respect to convictions based on guilty pleas.'" *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017) (quoting *United States v. Timmreck*, 441 U.S. 780, 784 (1979) (internal citation omitted).

## IV. DISCUSSION

All of Petitioner's claims of ineffective assistance presented in his § 2255 motion to vacate are groundless.

**A.  Failure to Object and Misrepresenting Plea Agreement** [Doc. 1 at 4].

In this claim, Petitioner asserts that his "attorney did not object to anything" and that his counsel "lied to [him] by telling [him that he] was signing a 15-year plea" [*Id.*]. Critically however, Petitioner does not enlighten the Court as to the nature of the objections he believes counsel should have made, or identify the point in the proceedings at which counsel should have offered the unspecified objections.

A successful § 2255 claim must be clothed with facts that show entitlement to relief. *See* Rule 2(b)(2), Rules Governing Section 2255 Proceedings (requiring a movant to "state the facts supporting each ground"); *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (requiring a petitioner to state facts that point to a real possibility of constitutional error to be entitled to habeas corpus relief). Because a petitioner bears the burden of articulating sufficient facts to state a viable claim for relief under 28 U.S.C. § 2255, Petitioner's bald statement that counsel "did not object to

anything" does not state a cognizable § 2255 claim that would warrant collateral relief. *See, e.g.*, *United States v. Santiago*, 135 F. App'x 816, 823 (6th Cir. 2005) (finding that arguments lacking supporting analysis need not be considered); *Noble v. United States*, No. 2:10-CR-51, 2018 WL 4441240, at *11 (E.D. Tenn. Sept. 17, 2018) (finding that "Petitioner's conclusory statements regarding [counsel's] failings do not state a claim cognizable under § 2255").

Furthermore, even if counsel's failure to make unidentified objections could amount to a deficient performance, Petitioner offers no claim of prejudice. *See Lafler v. Cooper*, 132 S.Ct. 1376, 1384 (2012) (finding that "[i]n the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice"). Petitioner has not alleged that, but for counsel's failure to make objections, he would have rejected the guilty pleas and, would have chosen to stand trial. Petitioners who assert claims of "ineffective assistance of counsel under *Strickland* have a heavy burden of proof," *Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005), and, here, Petitioner has not borne his burden. Therefore, because there was no prejudicial performance on the part of counsel, this first sub-claim claim lacks merit.

Petitioner's contention that counsel falsely told him that the plea agreement he was signing was for a 15-year sentence is not supported by the record. As the United States points out in its response, Petitioner's signed plea agreement specified that he faced a maximum potential sentence of life imprisonment for the methamphetamine conspiracy and the § 924 firearms offense, as well as a maximum potential penalty of twenty years imprisonment for the other drug offenses and the witness-tampering conspiracy offense [Doc. 3 (citing Doc. 72 at ¶¶ 1-3, Case No. 2:15-CR-96)].

During the plea hearing, Petitioner was informed of the maximum penalties he faced on each offense to which he was entering a plea (i.e., imprisonment of life, twenty years, and a consecutive five years) [Doc. 193, Plea Hr'g Tr. at 17]. Additionally, Petitioner indicated that he

understood that the government had made no agreement to recommend any particular sentence and that the Court would determine the sentence after it received the PSR, which he and the government would be able to read, consider, and challenge [*Id.* at 20]. The Court then asked Petitioner whether, knowing of all the penalties for his offenses, he still wished to plead guilty [*Id.* at 21]. Petitioner affirmed that he wished to so plead [*Id.*]. The Court found that Petitioner's plea was knowing and voluntarily entered and that he understood "the Plea Agreement made on his behalf in this case" [*Id.* at 22].

As the Supreme Court has explained, "[s]olemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S.at 73-74. This Court has found that Petitioner's guilty plea was made knowingly and voluntarily. A valid guilty plea relinquishes any claim that would contradict the 'admissions necessarily made upon entry of a voluntary plea of guilty.'" *Class v. United States*, 138 S. Ct. 798, 805, 200 L. Ed. 2d 37 (2018) (quoting *United States v. Broce*, 488 U.S. 563, 573-74 (1989)).

Additionally, the Sixth Circuit recently instructed:

> When an ineffective-assistance claim is based on misleading information regarding the consequences of a plea, a proper plea colloquy is generally deemed to cure any misunderstanding the defendant may have had about the consequences of the plea. *Ewing v. United States*, 651 Fed. Appx. 405, 410 (6th Cir. 2016) (citing *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999)). The court's proper advisement of rights is thus deemed to "foreclose" any showing of actual prejudice attributed to counsel's erroneous advice, because the defendant is deemed bound by his statements in response to the court's inquiry. *Id.* Otherwise, the plea colloquy process would be rendered meaningless if a defendant could reopen the record by later asserting that actually, he misunderstood. *Ramos*, 170 F.3d at 566.

*Thompson v. United States*, 728 F. App'x 527, 535 (6th Cir. 2018) (quoting *United States v. Pola*, 703 F. App'x 414, 423 (6th Cir. 2017)).

In light of the above reasoning, both sub-claims of Petitioner's first claim of ineffective assistance lack merit and warrant no relief under § 2255.

**B.     Attorney Trickery and Failure to Show Discovery** [Doc. 1 at 5].

Petitioner's second claim, in its entirety is that "attorney lied to me/tricked me into pleading guilty. He never showed me the discovery as give (sic) to him" [*Id.*].

Petitioner's claim that his counsel lied to him and tricked him into pleading guilty is devoid of any factual development. For example, Petitioner does not specific the content of his attorney's purported prevarications, when those claimed falsehoods were made, identify any circumstances surrounding those alleged fabrications, nor explain how those misrepresentations duped him into pleading guilty. As the Court has explained earlier in this Opinion, it is a petitioner's pleading duty to articulate sufficient facts to state a viable claim for relief under 28 U.S.C. § 2255, and Petitioner's skeletal assertion that counsel lied to him and tricked him into pleading guilty does not state a cognizable § 2255 claim that would warrant collateral relief.

Moreover, even if Petitioner had supplied sufficient factual detail of counsel's claimed lies and trickery and had he shown a deficient performance on counsel's part, Petitioner has not pled that prejudice ensued. This is so because Petitioner has not maintained that, absent counsel's alleged lies and chicanery, he would not have pled guilty but would have insisted on standing trial. *Strickland*, 466 U.S. at 697 (disposing of an ineffectiveness claim on the ground of lack of sufficient prejudice alone is permissible).

Petitioner's second sub-claim is that counsel did not show him discovery materials obtained from the government. Petitioner does not identify the discovery materials that he wished to review nor does he provide any details as to the contents of those discovery materials. In short, Petitioner's claim regarding this alleged attorney shortcoming is conclusory. Because the claim is conclusory, the Court has no basis upon which to find that counsel's performance was deficient and that counsel's shortcoming resulted in prejudice.

Even if Petitioner's claim were not conclusory, courts have found that, generally, the Constitution does not obligate an attorney to provide discovery materials to a criminally accused client. *See e.g., Carillo v. United States*, 995 F. Supp. 587, 591 (D.V.I. 1998) ("[T]here is no constitutional duty to share discovery documents with petitioner. Petitioner cites no case law for this proposition, and this court finds none."). This is not to say that counsel does not have a "duty to review and discuss the discovery materials with his client to keep him 'informed of important developments in the course of the prosecution.'" *Hinton v. United States*, No. 15 C 0752, 2015 WL 1943261, at *3 (N.D. Ill. Apr. 29, 2015) (quoting *Strickland*, 466 U.S. at 688). However, Petitioner is not alleging that his attorney failed to keep him abreast of discovery or of the progress of the case.

Petitioner's second sub-claim in his last claim of ineffective assistance is groundless and will not support collateral relief.

## V. CONCLUSION

For the reasons discussed in this Memorandum Opinion, Petitioner's § 2255 motion to vacate [Doc. 1] will be **DENIED** and **DISMISSED**.

## VI. CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if a petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit disapproves of the issuance of blanket denials of certificates of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).

A certificate of appealability should issue if a petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner whose claims have been rejected on the merits satisfies the requirements of § 2253(c) by showing that jurists of reason would find the assessment of the claims debatable or wrong. *Slack*, 529 U.S. at 484. A petitioner whose claims have been rejected on a procedural basis must demonstrate that reasonable jurists would debate the correctness of the Court's procedural ruling. *Id.*

Having examined all of Petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that the dismissal of those claims to be debatable or wrong. Therefore, the Court will **DENY** issuance of a certificate of appealability.

A separate judgment will enter.

ENTER:

s/ Leon Jordan
United States District Judge